We are now going to move to case number three of the morning, Gregory Williams v. Terry Kennedy. This is case number 18-2631. We'll be hearing first from Attorney Goodson, who has reserved two minutes of rebuttal time. Attorney Goodson. Good morning, Your Honors. May it please the Court, my name is John Goodson and I represent Petitioner Appellant Gregory Williams. Your Honors, Mr. Williams asked this Court for the limited relief of a remand for an evidentiary hearing to further develop his Strickland claim, and a remand is necessary for three principal reasons. First, Mr. Williams alleged that his Second, Mr. Williams also alleged that his attorney unreasonably advised him to reject a plea offer of 21 years as, quote, too much time, which the state now effectively concedes was better than anything he could have hoped for at trial. Third, the state court erroneously required Mr. Williams to expressly state that he would have accepted the offer, even though the Turning to my first point, by the time of the 402 conference, it was beyond question that attorneys rendered deficient performance when they failed to advise clients of their sentencing exposure, including the possibility of mandatory consecutive sentences, as the Illinois Supreme Court itself held in People v. Curry in 1997. The state does not dispute in its opposition brief that the district court erred when it held that this prior precedent was simply irrelevant because it did not come from the Supreme Court, and Mr. Williams clearly alleged that his counsel failed to advise him of his sentencing exposure. Contrary to the district court's holding below, his allegations were also clear and consistent, and no fair reading of his allegations supports the state's argument on appeal. The state contends that Mr. Williams' allegations amounted to mere conclusions, but he alleged facts, not legal conclusions, and the state tries to rephrase his petition as alleging that he should have been advised that he faced consecutive sentences on all 37 counts of his indictment, while it is clear that he alleged that he was not informed of the possibility that he could receive multiple or consecutive sentences. And this first basis for Mr. Williams' Strickland claim alone established deficient performance. This would be true regardless of what the record does or does not show about the other case then penned against him, because Mr. Williams could not assess his attorney's advice to reject the plea offer for both cases without knowing the sentencing exposure in both cases. Turning to my second point, Mr. Williams also alleged that his attorney unreasonably advised him to reject Judge Claps's offer as too much time. Again, this was advice that he could not assess without knowing his sentencing exposure at trial. The Illinois Appellate Court held that that advice was reasonable, namely because it believed Mr. Williams could have been acquitted of kidnapping, as the state itself once argued. Mr. Williams' opening brief before this court explained why that conclusion was wrong, and the state offered no response in its opposition brief, all but conceding that he could not have been acquitted of kidnapping. The state instead argues that defense counsel recommended a trial largely to develop the argument that Mr. Williams was guilty but mentally ill. Yet Judge Claps told the public defender on at least two occasions before the off-the-record 402 conference that a GBMI finding would have no effect on Mr. Williams' sentence. In fact, Judge Claps said that he would make an offer in a 402 conference before a hearing on Mr. Williams' mental illness because a GBMI finding would have no effect on his sentence. Yet defense counsel pressed ahead with what she herself called a, quote, pseudo defense, and even argued at trial that Mr. Williams was, quote, responsible for his actions but mentally ill. The state seems to think that this was a sensible strategy, even while describing it as one that could at best preserve the pretrial discount that Judge Claps had offered. This effectively recognizes that the public defender could not improve on the sentence at trial. In fact, she could do better only if Mr. Williams were acquitted of kidnapping and all counts carrying a mandatory minimum of six years or more and there was no dispute that he had committed three aggravated sexual assaults. And because the state no longer argues he could have been acquitted of kidnapping, this necessarily means the public defender could not have reasonably expected to achieve a better outcome at trial. And the other case pending against him involving SV does not alter that analysis because the record indicates that acquittal was unlikely in that case. What do we know, Mr. Goodson, about that second case? You've indicated by argument that you believe that acquittal was unlikely. What do what does the record reveal with regard to that second case that Mr. Williams had? Well, Your Honor, as noted in the reply brief, although the state indicates that Mr. Williams offered no record support for that argument, the record citations were provided earlier in Mr. Williams opening brief before the same point was repeated later. In brief, the charges indicate that they were remarkably similar with similar sentencing ranges. And those charges appear, I believe, at pages 290 to 292 of the supplemental appendix. And it's undisputed that Judge Klapp offered an almost identical sentence in both after hearing a summary of the evidence in both cases. As even the state recognizes, the prosecutor would have supplied the evidence then pending against Mr. Williams during the off the record 402 conference. And in addition, Mr. Williams went on to plead guilty to two counts of aggravated criminal sexual assault and one count of aggravated kidnapping that carried a sentencing range of 18 to 90 years. And he was, in fact, sentenced to 30 years. For all those reasons, the record indicates that an acquittal was extremely unlikely in a case involving S.P. I will just know. Yes, Your Honor. I'm sorry. Good morning. It's Judge Scudder. I have a I have a similar question to Judge Brennan. And the reason I'm asking the question is because when I look at the Illinois Court of Appeals opinion, in particular, pages 31 and 32 of that opinion are in the supplemental appendix, pages 286 and 287. The lack of information about the 2625 case, the S.P. case, seemed to me, upon my reading of the opinion, to be significant. Now, just as you're doing in the oral argument, you make a number of assumptions and you draw a lot of inferences about the 2625 S.P. case. And as fair and as logical as your points seem, what I'm worried about is whether you can tie them into any into any record evidence, because I what I'm worried about is whether I can say with any confidence that the points you make or the observations you make are any more fair than the ones the state makes, or even more importantly, the ones that the Illinois Court of Appeals made when it said it really didn't know a thing about the S.P. case. You're right that we know the charges against Mr. Williams in the case. You're right that we know what the trial judge offered as part of the 41-year plea arrangement. But I don't know what the state's evidence was. I don't know whether the victim was willing to testify. I don't know whether the defendant had a prior relationship with the victim. I don't know whether the defendant had a defense. I don't know whether there was forensic evidence. I have no idea what advice Mr. Williams received regarding the 20-year plea. Does any of that trouble you? Well, Your Honor, the primary response, I think, to that, especially your last point about the advice that Mr. Williams did not receive, is the point that Mr. Williams clearly alleged that he did not receive any advice regarding his sentencing exposure regarding either case. So even if an acquittal was possible in the case involving S.P. Where does he allege that, Mr. Gibson? Because when I look at his petition in the, you know, you provided in the supplemental appendix, that petition is focused, at least to my eye, on the 2627JH case. Well, Your Honor, in the petition at pages 186, sorry, in the supplemental appendix at 186, which quotes or provides Mr. Williams' petition in the post-conviction proceedings in Illinois State Court, he says, quote, that counsel wouldn't answer his questions or take reasonable steps to ensure he possessed the basic knowledge or understanding of the numerous crimes, counts, and actions he faced. And that would, of course, encompass both actions. In addition, on the next page. Hold on. Why do you say of course? Because I don't see anything in his petition that talks about the 2625 case. Because, I mean. Sorry, Your Honor. Go ahead. No, go ahead. Go ahead. Well, Your Honor, I think it's the, when he's alleging what he did or didn't receive in terms of the advice of counsel in his petition, he makes clear that he would of rejecting the court's plea offer, which of course extended to both cases. And I don't see that there's any other reading of that other than that he did not receive advice with respect to either case. It would have been highly unusual if the attorney would have advised him that to the second case, that would have proceeded to trial second, but not as to the first case, which was going to proceed to trial first. The, I frankly just don't under, don't read his petition as alleging anything other than the fact that his lack of advice as to the possible consequences of rejecting the court's plea offer, which is stated at pages 187 of the supplemental appendix, extended to the lack of advice that he received in total as to either case. Because of course, the 402 conference covered both cases. And then his public defender indicated on the record that she would need a continuance to speak to Mr. Williams about the offer. That then occurred in the week in mid-April before she went back on the record and indicated the offer had been rejected. And Mr. Williams states, I believe clearly on page 187 of the supplemental appendix that he did not receive any advice as the possible consequences of rejecting that offer, which extended to both cases. And so again, regardless of whether the record indicates one thing or another about the case involving SD, it still is the case that having lacked the advice as to his sentencing exposure at trial, he couldn't assess whether Judge Claps's offer in both cases was a comparatively good deal. And just to continue on that point, Your Honor, I think it's rather, you know, telling that even when Judge Claps assessed Mr. Williams's, pardon me, Mr. Williams's petition in the first instance, he did not focus on the lack of advice that Mr. Williams alleged that he received. Instead, he focused on the affirmative advice that he alleged he received and found nothing wrong with that, rather than focusing on the fact that he lacked any evidence regarding his sentencing exposure at trial. So just to continue on the point, and we're continuing on to the third point, which involves the prejudice finding of the state court. The state court erroneously required Mr. Williams to expressly state that he would have accepted the offer. And as explained in Mr. Williams's briefing, the holding effectively deletes the reasonable probability part of the often repeated Strickland standard. And on top of that, Mr. Williams did allege that he would have accepted the plea offer when he said that it is a far cry to contend that had he been fully cognizant and appreciative of the potential detriment finding following a guilty, that he would have knowingly rejected the court's merciful offer. And it remains unclear to me exactly what the state thinks Mr. Williams is attempting to say there, other than that he would have accepted the offer. And... Mr. Goodson, you're in about two minutes, just so you know. Thank you, Your Honor. I will just conclude with the additional points. Sorry, Your Honor, actually, I see that I would like to reserve those last two minutes for rebuttal, if I may. You may. Thank you very much, Mr. Goodson. We'll now move to counsel for the appellee, Mr. Schneider. Good morning, Your Honor. May it please the court, counsel, and Assistant Attorney General Josh Schneider on behalf of the Respondent Appellee Warden. I'd like to start with performance here, because Strickland requires the courts, and the Illinois court in this case, to apply a strong presumption that counsel's challenged actions could be considered sound strategy. But Petitioner's argument really turns that presumption on its head, asking for silences in the record to be construed as proof of incompetence. I think this is clearest in Petitioner's argument concerning his allegation that counsel performed efficiently by recommending that he reject the trial court's 41-year sentence recommendation as too much time. In the ordinary mine run case pretrial plea stage, counsel's faced with an extremely complex risk calculation that involves a lot of different variables. There's not just the strength of the exposure, and then there's also counsel's particular experience with that particular prosecutor, how skilled an advocate are they at marshaling the evidence, experience with that particular trial judge and their sentencing proclivities. And so the Strickland presumption of competence applies with particular strength in the in the Lafleur settings. Now here, counsel was facing a situation that was twice as complex because it was not a 21-year offer in one case, rather it was a 41-year sentence recommendation, 21 years in this case consecutive to 20 years in the other case. And we don't know anything about the other case other than that Petitioner faced similar charges, which means that we don't know fully half of the inputs that went into counsel's risk analysis. And so there's no basis, the State Appellate Court reasonably found, to second-guess the reasonableness of counsel's presumptively sound recommendation that 41 years was too much time, because we just don't know all the factors that went into it. And we don't know that information because Petitioner did not put it into the state report record. He did not allege in his post-conviction petition any information about that second case. Now Petitioner argues that there are two ways that we can tell that the evidence must have been equally compelling in the other case. First, he argues, well, the evidence must have been equally strong because the sentence recommendation, the 41 years, was split pretty much equally between the two cases. But of course, the sentence that is seen as appropriate for particular conduct depends on the particulars of the conduct and the defendant who committed that conduct. It doesn't turn on the strength and the evidence. Petitioner would not have been sentenced to a higher sentence if there were, for example, gunshot residue than if there weren't, or if there were five eyewitnesses rather than three. As long as the evidence is constitutionally sufficient to convict, that's the end of it, and now we turn to sentencing factors. Petitioner also argues that the evidence was equally strong, particularly he talks about DNA evidence, and he points to the docket in the other case, which showed that blood testing was ordered, and he argues, well, if blood testing was ordered, there must have been DNA evidence in the other case as well, because of course there was strong DNA evidence tying Petitioner to the crime in this case. But Petitioner cites to page 292 of the supplemental appendix for that proposition, that's the docket for the other case, and if you will go to page 292, you see that that blood testing was ordered after Petitioner pleaded guilty and was sentenced in the other case, and of course blood testing ordered after someone has pleaded guilty and been sentenced is not blood testing for the purpose of gathering evidence of guilt. It's blood testing because Illinois, like many other jurisdictions, requires that defendants who are convicted of particular state and federal DNA databases. I would also note that the docket that Petitioner cites to wasn't actually part of the state court record that was before the state appellate court when adjudicating his claim. Respondents filed the docket in the federal hand-based action to provide sort of narrative background, so the state appellate court was not reviewing that when it made its decision, so it knew even less than we do. Mr. Schneider, do we know that because blood testing or DNA testing was ordered post plea and post sentencing in the other case, which is how it's a dedicated term in your brief, do we know therefore that there was no DNA evidence and no blood testing with regard to criminal liability in the other case, or is that just an inference? So we don't know from that, although I will note that under Illinois law, if they've already taken blood, they don't order it again because they already have the blood, they can reuse it. I will note, though, that in the pretrial hearings, when both cases were up on various scheduling hearings and so on, defense counsel and also the assistant state's attorney both indicated their belief that there was not DNA evidence in the other case. Defense counsel said there was no evidence in the other case, and then I believe the ASA indicated that his records showed no lab work for the other case, but he said he was going to check on it. We never heard anything further, of course, that would have been in the other case. We don't have transcripts from that case, but the only indication we have is it seems there was unlikely that there was DNA evidence in the other case, but again, the reason we don't know any of this is because the petitioner never alleged any of those facts in his post-conviction petition, so there was no way. Mr. Smiley, this is Judge Ripple. Maybe you could help me understand the habeas procedure in the Illinois courts a bit better. Just how much did Mr. Williams have to in the initial pleading in his habeas corpus petition, and how before he would get to the stage where he might get a hearing on the interstate court on all of these issues? So, the Illinois post-conviction procedures require that he provide the gist of a claim. There are a number of pleading requirements, for example. Generally, they need to attach affidavits or other record evidence just to proceed to an evidentiary hearing, and that's not the case in these sorts of claims where it would be sort of redundant to his allegations. The question as to how convincingly does he need to or how fully does he need to allege his claim, it's a gist of a claim standard. Now, petitioner has argued that the Illinois courts erred in applying that standard, that they didn't construe his allegations liberally enough under the Illinois Post-Conviction Hearing Act, or that they held him to too high a pleading standard under the Illinois gist of a claim standard. But, of course, that's a question of state law, and that the state court adjudicated that question of state law, and its application of state law is, of course, beyond this court's review sitting in habeas. All we know is that the state courts found that his pleadings were legally insufficient, and that was reasonable. Now, we can look at the second claim and see why. Now, petitioner now argues that he plainly alleged that he wasn't advised about his sentencing exposure, but if we look at the actual pleadings, both in state court and then in his habeas petition in the district court, that's not clearly what he pleaded. He cites two pages, I believe it's 186 in the supplemental appendix, but that's a separate claim. That's a claim that counsel failed to consult, and in his federal habeas petition, he alleged on page six of his district document one that, quote, subsequent to a 402 conference, defense counsel never advised petitioner as to the possible consequences of rejecting the pre-offer. Defense counsel never apprised petitioner that in the instant case alone, there were 37 counts for which petitioner could receive multiple or consecutive sentences, end quote. So when we are trying to figure out what are the possible consequences of rejecting the pre-offer that he faults counsel for not advising him of, the only consequence that he provided in both state court and in his federal habeas petition is the consequence that he could receive multiple or consecutive sentences on 37 counts, but as everyone now agrees, he could not receive multiple or consecutive sentences on 37 counts. He could receive them on at most four counts. So had counsel given him the advice that he faults counsel for not giving him, she would have been giving him incorrect advice. And to the extent that he's now arguing that it's not that failing that he alleged in his federal habeas petition, but a failure to advise him of his sentencing range that he faced, we suggest that's forfeited at this point. I would turn briefly to prejudice. State appellate court also reasonably found that petitioner failed to establish prejudice. Petitioner argues that state appellate court was wrong in requiring that he at least alleged that he would have accepted this court-sensing recommendation, but Lassler does not establish what factual allegations are requiring to establish a required different standards. Some courts like Illinois require that he at least plainly allege that he would have accepted it. Other courts, including this court for a period, have required that he not only allege that he would have accepted it, but that he also back up that allegation with some sort of objective record evidence. Here, he did not allege that he would have accepted it. He alleged this somewhat baroque and equivocal statement that, let's see, it is a far cry to contend that had he been fully cognizant and appreciative of the potential detriment following a finding of guilt, which of course would include a guilty plea, he would have knowingly rejected the court's merciful offer. Now, the question at this stage is whether it was objectively unreasonable for the state appellate court to find that allegation insufficient to reasonable probability that petitioner actually would have accepted the recommended sentence. And it was not objectively unreasonable. This court in Torrey-Ferman found that an allegation that the petitioner, quote, would have been insane not to accept the agreement for the minimum sentence, end quote, was not a plain statement that he would have accepted it. And this is similarly equivocal and certainly not objectively unreasonable. It's at least to for the Illinois appellate court to have construed that statement as failing to plainly allege that he would have accepted the plea. And that minimal consistency is all that's required to bar the litigation under 2254D. But even under DeNovo review, petitioner failed to establish prejudice because he couldn't establish a reasonable probability that the prosecution would have accepted the court's sentencing recommendation or that the court would have entered that sentence. Everyone agrees that the sentence that was offered, at least as it pertains to, I guess not offered for long term, that was recommended, at least pertaining to this case, the 21-year portion of the 41-year sentence, was below the minimum sentence permitted by Illinois law. Petitioner argues that we should presume that the sentence recommendation must have been for some unspecified subset of the counts and in exchange for dismissal of the unspecified remainder of the accounts. But there's no basis in the record for that presumption. Certainly the prosecution never suggested that it was for some subset of the counts. When the trial court announced what it called its offer under 402, the trial court did not indicate that it was for some subset of the counts, said it was for this case and that case, not for counts 1, 2, and 5 in this case and 10, 11, 12 in the other case. And under 402, under rule 402, the court is not actually making an offer, although we sort of refer to a clerk really as an offer, it's making a sentence recommendation. If here's information about the crimes from witness reports and police reports and so on, then here's all the sentencing information relating to defendants, its criminal background and substance abuse troubles and family background, that sort of thing. And then it makes what rule 402 describes as a recommendation as to an appropriate sentence. Now, it then is explicitly available to both the prosecution and defendants to reject that recommendation. The trial court has no authority under rule 402 to bind the state to any particular sentence recommendation. Trial court has no authority to dismiss charges properly filed by the state because the court wants to induce a guilty plea. All it can do is say, this is a sentence that I think is appropriate. And then if the parties agree with the court, then they can enter into a plea agreement for that sentence. If that requires certain charges to be dismissed by the state, the state can choose to do that or not. Here, we have no basis to believe that the state would have agreed to do so. As petitioner notes, counsel had indicated an intent to seek a guilty but mentally ill verdict, which is not the sort of posturing that strikes fear in the heart of a prosecutor. Similarly, we have no basis to believe the court would have actually entered the sentence had it petitioner tried to accept it because it was unlawful. And the court has no authority to enter an unlawfully low sentence under Illinois law. And the court would have learned about unlawfulness when it had petitioner tried to accept it deal. When it admires him, when it turned to the statutes, saw the actual minimum excessive margin, but the minimum available and realized that the sentence that it recommended was below that minimum. So because the state of power court reasonably found that petitioner established neither prejudice nor performance, this court should affirm the holding of the district court. Thank you. Thank you, Mr. Schneider. We'll now move back to Mr. Goodson for any brief rebuttal. Thank you, Your Honor. First, Judge Ripple, if I could just point your attention to People v. Galtney discussing Mr. Williams' brief, which sets forth in very clear detail the habeas procedure at an Illinois court and notes that it is an extremely low threshold at the first stage and that Mr. Williams needed to allege only the gist of a constitutional claim and provide limited detail. Had he proceeded to the second stage, he would have been appointed counsel who would have been able to file an amended petition for him. Turning to another point that the state says that we should, that this court should defer to the state's adjudication of this question of state law, but there was no adjudication of this question of state law. The state court's opinion is simply silent on why it ignored the allegations regarding what Mr. Williams lacked in terms of advice about his sentencing exposure. All of these questions about what the court might have done and what the gist of the constitutional claim might have been are assumptions of what they might have been thinking, and Mr. Williams explained why, given the procedural rules in place in Illinois, that assumption would have been unfounded, especially given the unclear standard that attorneys must advise attorneys of their clients of their sentencing exposure. Just real quickly, Judge Scudder, I recognize your concerns and I take them. I would just, if I may, just redirect your attention to the top of page 187 of the supplemental appendix. If you read that paragraph in full, particularly given the opening sentence in the last where he says, moreover, adding an additional point that in the instant case alone, there were 37 counts for which he could receive multiple consecutive sentences, taken as a whole, I think it's rather clear that he was talking about the lack of advice received as to both offers. And I will just note that there is an irony in this case, many reversals of its positions in the course of this litigation. And footnote three of its opposition brief, it explains that Mr. Williams, in fact, faced a much higher sentence at trial, and in fact, his mandatory minimum with the sentences of conviction far exceeded the 41-year combined offer. So even in the case involving J.H. alone, not have improved on the offer of 41 years at trial, even if he had been acquitted in the case involving S.D. And the state never explains the inconsistency in the positions that it takes where it highlights the enhancements and the other aggravated counts that Mr. Williams faced, which only indicates that he actually was in much graver jeopardy if he proceeded to trial. So in conclusion, Your Honor. Thank you, Mr. Goodson. We're at time. Thank you very much. Thank you, Your Honor. Any further questions of the counsel, Judge Ripple? No, thank you. And Judge Scudder? None for me. Thank you. Thank you to both counsel. The case will be taken under advisement.